ESTATE OF GEORGE TUTTLE BROKAW, DEC'D., UNITED STATES TRUST COMPANY OF NEW YORK AND FRANCES SEYMOUR BROKAW, AS EXECUTORS, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90091. Promulgated April 18, 1939.

*Harry J. Ahlheim, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $73,403.61 in estate tax. The only issue is whether the Commissioner erred in including in the gross estate $312,884.47 representing the fair market value at the date of the death of the decedent of property transferred by him in trust. The parties have filed a stipulation of facts, which is hereby adopted as the Board's findings of fact.

George Tuttle Brokaw, the decedent, died on May 28, 1935. He was survived by his first wife, Ann Clare Brokaw, their daughter, Ann Clare Brokaw, and also by his second wife. The petitioner was first married in 1923. He and his wife separated in the latter part of 1928 and they never thereafter lived together. Their daughter lived with her mother.

The decedent and his first wife entered into a separation agreement on January 31, 1929. The decedent agreed among other things to discharge certain debts of his wife and to pay her $2,500 per month for the term of her life. The money was to be used for her own support and maintenance and also for the support, maintenance, and education of their daughter. Divorce and remarriage were not to affect the provisions of the agreement. The monthly payments were to be a charge upon the estate of the husband in case he pre-

deceased his wife. The wife released all of her rights in the estate of her husband. The agreement contained the following provision:

In the event, however, that the husband shall at any time hereafter establish a trust in the principal sum of Four Hundred and twenty-five thousand ($425,000) Dollars, the income of which shall be payable to the wife during her life, then from and after the date that such trust is established, the obligation of the husband and of his estate to make the aforesaid payment of Twenty-five hundred ($2500) Dollars a month shall cease, and the income from the said trust shall be accepted by the wife in full satisfaction and discharge of the obligation of the husband to make the aforesaid monthly payments, and the provisions of this agreement with reference to the application of the aforesaid monthly payments shall apply with full force and effect to the income from the said trust. Such trust may be established by the husband during his lifetime, or by will, or by instrument executed during his lifetime, which becomes effective as to the trust upon the death of the husband.

For the purpose of said trust the husband may deposit securities, and such securities shall be valued at the market value as of a date to be agreed upon between the parties in writing; * * *

The amount of $2,500 per month was fixed by the parties as the approximate amount reasonably required for the support of the wife and daughter in accordance with their station in life and with the decedent's ability to furnish such support. The parties contemplated that about one-third of the amount would be devoted to the support of the daughter during her minority. The decedent paid his wife $2,500 per month for February, March, April, and May, 1929. The property of the decedent in 1929 was worth more than $1,425,000.

The wife after January 31, 1929, instituted an action of divorce and obtained an absolute decree of divorce from the decedent on May 20, 1929. The decree ratified and approved the separation agreement and made it enforceable as a part thereof. The decedent then notified his wife that he intended to establish the trust and the two agreed that certain securities should constitute the principal of the trust fund. The decedent had prepared a trust agreement in January 1929 for use in case he exercised his option to establish a trust and the wife had approved the form of that agreement. He delivered the trust agreement on June 12, 1929, to the Guaranty Trust Co. and to his wife as the trustees named therein, together with the securities. The fair market value of the securities placed in the trust at the time of its creation was $414,324.50. The wife accepted the trust in lieu of all other payments to be made to her by the decedent.

The trust income is payable to the wife during her life. She is given a power of appointment by will over $200,000 of the corpus. The balance of the corpus, or the entire corpus in case there is no valid exercise of the power of appointment, goes to the daughter at the death of the wife or to her lawful issue, if any. If she leaves no issue, then the corpus goes to the decedent, or as he shall appoint

by will. The trust agreement contains a provision that the decedent and his wife might terminate, modify, alter, or revoke the trust in whole or in part. It was modified in 1933 in some minor and unimportant particulars.

The decedent made no further monthly payments to his wife after May 1929, but thereafter the wife received the net income of the trust. The gross income of the trust varied from $22,097.32 in 1931 to $13,679.89 in 1936. The securities constituting the trust fund were of the fair market value of $312,884.47 at the date of the decedent's death. The respondent included that amount in the gross estate.

The wife was twenty-six years of age when the trust was established. The daughter was then four and one-half years of age. The then value of an annuity of $30,000 payable to a person then twenty-six years of age was $529,794.12.

Section 302 (d) of the Revenue Act of 1926 provides that there shall be included in the gross estate the value of property:

To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * * except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

The following was added by an amendment on June 6, 1932:

For the purpose of this title, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

The Commissioner concedes that the transfer was not made in contemplation of death, all of the transactions were bona fide and for the purposes mentioned, the transfer took effect immediately, the corpus is not taxable because of any retention of income, and the Joint Resolution of March 3, 1931, and section 803 (a) of the Revenue Act of 1932 have no application. See *Hasset* v. *Welch*, 303 U. S. 303; *James C. Webster*, 38 B. T. A. 273, 281. Since the transfer was one where the enjoyment was subject at the date of the death of the decedent to change through the exercise of a power by the decedent in conjunction with his wife to alter, amend, or revoke, section 302 (d) applies unless there was adequate and full consideration in money or money's worth for the transfer. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85; *Helvering* v. *Stevens*, 297 U. S. 693. Thus, there is squarely presented the question of whether there was an adequate and full consideration in money or money's worth for the transfer.

The petitioner contends that the trust was founded upon an adequate and full consideration in money or money's worth, since it was

made in discharge of the decedent's obligation to pay his wife $2,500 per month as fixed by the divorce decree, which had the effect of an enforceable judgment. The parties have stipulated that the wife had a dower interest in real estate which interest was worth $20,591.85 in 1929 and she "had and would have no other dower right or statutory estate created in lieu of dower or other marital rights in her deceased husband's property or estate." That stipulation was in accordance with the law of the State of New York as it was at that time. Despite the fact that the wife had no other interest in his estate, the decedent was legally obliged so long as he lived to support her and to support his daughter during her minority. Although it has been held that even prior to the enactment of section 804 of the Revenue Act of 1932 the release of dower was not consideration in money or money's worth, *Sheets* v. *Commissioner*, 95 Fed. (2d) 727, affirming 35 B. T. A. 220; *Empire Trust Co.* v. *Commissioner*, 94 Fed. (2d) 307, affirming 35 B. T. A. 866; *Eben B. Phillips*, 36 B. T. A. 752, nevertheless, this case does not depend upon that rule of law.

The relinquishment of dower was only a part of the consideration for the transfer in trust and there was other valuable consideration, consisting of the release and discharge of the legal obligation of the decedent to support and maintain his wife and minor child. The right of the wife and child to that support was not a right in the deceased husband's property or estate. *Edythe C. Young, Executrix*, 39 B. T. A. 230. It was a right which would cease at his death. The stipulation further shows that the release or discharge of that obligation was of a value at least equal to that of the securities transferred to the trust. The agreement was reached by parties dealing at arm's length. The stipulation contains the following statement with reference to the payments of $2,500 per month:

* * * Said sum was estimated and fixed by agreement of the parties, as the approximate amount reasonably required for the support and maintenance of the wife, Ann Clare Brokaw, and of the daughter, Ann Clare Brokaw, in accordance with their station in life and with his ability to furnish such support and maintenance.

It was also stipulated that the value of an annuity of $30,000, payable to a person of the age of the wife, was $529,794.12. Consequently, it seems reasonable to conclude that the discharge of the obligation was at least worth $414,324.50. Therefore, we conclude that the corpus of the trust can not be included in the decedent's gross estate under section 302 (d), as amended, for the reason that there was an adequate and full consideration in money or money's worth for the transfer of the securities to the trust.

*Decision will be entered under Rule 50.*